Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Katrina Williams*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Katrina Williams, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Life Insurance Company of North America, ValueOptions, Inc., ValueOptions Inc. Employee Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Katrina Williams (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant ValueOptions, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Life Insurance Company of North America (hereinafter referred to as "LINA"). The specific long term disability policy is known as group policy FLK 0960081. The specific waiver of premium policy is known as group policy FLX 0960573. The Company's purpose in purchasing the LINA policies was to provide disability insurance and other benefits for its employees. Upon information and belief, the LINA policies may have been included in and part of the ValueOptions Inc. Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policies to LINA. Plaintiff believes that as it relates to her claim, LINA functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating her claims due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

-2-

1    6.    The Company, Plan and LINA conduct business within Maricopa County and
2 all events giving rise to this Complaint occurred within Maricopa County.

3 *Venue*

4    7.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28
5 U.S.C. §1391.

6 *Nature of the Complaint*

7    8.    Incident to her employment, Plaintiff was a covered employee pursuant to
8 the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7).
9 Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to
10 §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits
11 she may be entitled to as a result of being found disabled.

12    9.    After working for the Company as a loyal employee, Plaintiff became
13 disabled due to serious medical conditions and was unable to work in her designated
14 occupation as a Team Specialist/Case Manager on or about August 5, 2007.  Plaintiff has
15 remained disabled as that term is defined in the relevant policies continuously since that
16 date and has not been able to return to any occupation as a result of her serious medical
17 conditions.

18    10.   Plaintiff applied for and received short term disability benefits under the
19 relevant LINA policy, FLK 0960080, for the maximum period allowed under the policy.

20    11.   Thereafter, Plaintiff applied for long term disability benefits under the
21 relevant LINA policy, which were approved as of November 4, 2007.

22    12.   The relevant long term disability policy provides the following definition of a
23 covered disability which applies to Plaintiff's claim:

24    An Employee is considered Disabled if, solely because of Injury or
    Sickness, he or she is:
25
26

> 1. unable to perform the material duties of his or her Regular Occupation, and
>
> 2. unable to earn 80% or more of his or her Indexed Earning, from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training or experience, and
>
> 2. unable to earn 60% or more of his or her Indexed Covered Earnings.

13. Plaintiff also applied for waiver of premium coverage on her group life insurance policy, which was approved as of May 2, 2008.

14. The relevant LINA waiver of premium coverage on group life insurance policy, FLX 0960573, provides the following definition of disability which applies to Plaintiff's claim:

> An Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

15. The definition of disability applied under the long term disability policy after the first twenty-four (24) months of coverage is substantially similar to the definition of disability applied by the waiver of premium policy.

16. As part of LINA's ongoing evaluation of Plaintiff's claim, one of Plaintiff's treating physicians provided LINA with an August 15, 2008, August 23, 2008, September 18, 2008 and December 26, 2008 assessment of Plaintiff's ability to work concluding Plaintiff "cannot" work and it was "unknown" if she would ever be able to return to work. Plaintiff also provided LINA with an August 29, 2008 assessment of her ability to work completed by another treating physician, concluding Plaintiff was unable to return to work and stating her condition was "chronic."

17. LINA notified Plaintiff in a letter dated April 30, 2009 the relevant definition of disability would change as of November 4, 2009 and it was conducting an evaluation of her eligibility for benefits beyond November 3, 2009.

18. In support of Plaintiff's continued claim for long term disability benefits, one of Plaintiff's treating physicians provided LINA with a statement concluding Plaintiff was unable to work. Plaintiff also provided LINA with a June 3, 2009 narrative letter from one of her treating physicians stating her self-reported limitations were "consistent and believable."

19. In response to LINA's request, one of Plaintiff's treating physicians submitted a Physical Ability Assessment Form dated June 19, 2009, describing Plaintiff's limited abilities to perform work related tasks. In further support of her claim for long term disability and waiver of premium benefits, Plaintiff submitted to LINA a July 16, 2009 narrative letter from one of her treating physicians stating she suffered from multiple "serious," "chronic," "debilitating" and "disabling" medical conditions and concluded she is "permanently disabled with ZERO employability and that this condition is permanent." (original emphasis).

20. As part of its review of Plaintiff's claims, LINA referred Plaintiff's claims to MES Solutions ("MES"), a third party vendor, in order to obtain a medical review by an alleged independent physician.

21. Upon information and belief, MES declares on its website [1] it is in the business of providing claim review services to the disability insurance industry and is the nation's "largest" and "most experienced" claim review service provider available:

National Leader in Independent Evaluation Services.

---

[1] *See* www.mesgroup.com

-5-

Largest and most experienced independent medical evaluation and peer review company in the nation.

22. Upon information and belief, due to its extensive business relationship with the disability insurance industry and possibly LINA, Plaintiff believes the involvement of MES in the review of her claims presents a conflict of interest and is a reason her claims were denied and why she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1. Due to the nature of MES' relationship with the disability insurance industry and LINA's reliance on MES, Plaintiff questions the objectivity and impartiality of LINA, MES and any individual retained by LINA and/or MES to review her claims and provide a full and fair review.

23. MES and LINA's conflicts of interest are evident in the July 29, 2009 report authored by MES contractor Debra H. Rowse, M.D., who was retained to alleged provide an independent medical examination of Plaintiff. Upon information and belief, Dr. Rowse was not medically qualified to fully and fairly evaluate Plaintiff's serious medical conditions. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" and it afforded her an unlawful review by failing to do so.[2]

24. Plaintiff believes it was unreasonable and evidence of LINA's conflict of interests for Plaintiff's claim to be referred to a physician who did not have the medical

---

[2] ERISA sets a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan. *See* 29 U.S.C. § 1104(a)(1). ERISA simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials." *See Firestone*, 489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)). ERISA also supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008).

1  training, knowledge or experience to fully and fairly evaluate Plaintiff's disabilities. A
2  reasonable un-conflicted fiduciary making a good faith effort to afford a full and fair review
3  would have retained a fully qualified physician to review Plaintiff's claim on appeal.
4  "ERISA imposes higher-than-marketplace quality standards on insurers" [3] and LINA's
5  referral of Plaintiff's claim on appeal to Dr. Rowse falls well below the market place
6  standards set forth in *Glenn* and therefore, LINA denied Plaintiff of a full and fair review.

7        25.    In her July 29, 2009 report, Dr. Rowse noted Plaintiff's evaluation "took
8  longer than usual due to [Plaintiff's] difficulty in moving," but concluded Plaintiff was able
9  to work an eight (8) hour day with certain stated limitations. Dr. Rowse's evaluation of
10 Plaintiff was flawed because it was selective and sought to de-emphasize Plaintiff's serious
11 medical conditions in order to provide a reason for LINA to justify a denial of her claims.

12       26.    Upon information and belief, Plaintiff believes Dr. Rowse may have an
13 incentive to protect her own consulting relationship with the disability insurance industry by
14 providing medical review reports which selectively review and ignore evidence as occurred
15 in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to
16 insurance companies such as LINA and which supported the denial of Plaintiff's claims.
17 Plaintiff believes Dr. Rowse's review of her claims presents a conflict of interest and is a
18 reason her claims were denied and she did not receive a full and fair review pursuant to
19 ERISA, 29 U.S.C. § 2560.503-1.

20       27.    In response to Dr. Rowse's Report, one of Plaintiff's treating physicians
21 provided LINA with a narrative letter dated August 13, 2009, stating Dr. Rowse "needs to

---

[3] *Id.*

admit" certain evaluations of Plaintiff's serious medical conditions "is out of her training and expertise."

28.    LINA notified Plaintiff in a letter dated August 24, 2009 she no longer met the relevant definition of disability with regard to her claim for waiver of premium coverage.  In denying Plaintiff continued waiver of premium benefits, LINA relied extensively on the July 29, 2009 medical evaluation report prepared by Dr. Rowse.

29.    LINA notified Plaintiff in a letter dated August 28, 2009, she no longer met the relevant definition of disability with regard to her claim for long term disability benefits, again relying extensively on the medical examination report prepared by Dr. Rowse and a Transferable Skills Analysis dated August 27, 2009, setting out several occupations Plaintiff could allegedly perform based on Dr. Rowse's July 29, 2009 report.  LINA terminated Plaintiff's long term disability benefits as of November 3, 2009 after erroneously concluding she failed to provide sufficient evidence to support the severity of her serious medical conditions.

30.    LINA's August 24, 2009 and August 28, 2009 denial letters confirm it failed to provide a full and fair review pursuant to ERISA because it completely failed to reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's evidence.  LINA further failed to provide Plaintiff with a full and fair review of her claims pursuant to ERISA because it relied on the opinions of an unqualified physician while ignoring the opinions of qualified physicians who opined Plaintiff was totally disabled.

31.    LINA's August 24, 2009 and August 28, 2009 determinations were further erroneous and unlawful because Plaintiff's medical conditions had not improved in any

meaningful way which would have allowed a return to work [4] from the time LINA originally evaluated and approved Plaintiff's waiver of premium claim, which applies substantially the same definition of disability as applicable to Plaintiff's claim for long term disability benefits after the first twenty-four (24) months of coverage.

32. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 28, 2009 denial of her claim for long term disability benefits in a letter dated October 5, 2009. Plaintiff timely appealed the August 24, 2009 denial of her claim for waiver of premium benefits in a letter dated November 16, 2009.  In support of her appeals, Plaintiff submitted additional medical information which demonstrated she was unable to engage in any occupation as set forth in the relevant LINA long term disability and waiver of premium policies.

33. On appeal, Plaintiff submitted a September 14, 2009 medical record from one of her treating physicians stating Plaintiff was not to work because of her serious medical conditions.  Plaintiff also submitted a September 21, 2009 narrative letter from another treating physician who opined Plaintiff "is unable to work."

34. In a letter dated November 24, 2009, without any evidence Plaintiff was able to engage in any occupation given her restrictive work abilities and relying extensively on the opinion of Dr. Rowse and the Transferable Skills Analysis prepared based on Dr. Rowse's opinions, LINA notified Plaintiff it was upholding the denial of her claims for long

---

[4] *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586 (8th Cir. 2002) (holding once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable.); *see also*, *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001); *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835 (8th Cir. 2001); *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001) (burden placed on insurer to establish claimant's ability to work).

term disability benefits and waiver of premium after erroneously finding Plaintiff failed to demonstrate she was disabled as defined by the relevant policies.

35. In denying Plaintiff's long term disability claim on November 24, 2009, LINA relied upon its own Medical Director. Plaintiff questions the credentials, independence, impartiality and bias of LINA's own employees in reviewing her claim. Plaintiff believes the opinions of LINA's Medical Director are adversarial to her claim due to LINA's conflict of interest in that its own employees evaluated her claim. In addition, LINA's Medical Director did not have the appropriate medical training and expertise to fairly evaluate Plaintiff's claim, which violates ERISA for the same reasons set out hereinabove and incorporated herein by reference. Plaintiff believes LINA's financial conflict of interest was a motivating factor in why it referred her claim to its own unqualified employee for evaluation.

36. LINA's November 24, 2009 denial again failed to provide Plaintiff with a full and fair review after failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h), by again completely failing to reference, consider and/or selectively reviewing most if not all of her evidence which adequately documented the fact Plaintiff's medical conditions had not improved and she continued to meet the relevant definitions of disability and by failing to have a qualified, disinterested physician review her claim.

37. LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the limitations set forth in her medical evidence, failing to obtain a peer review evaluation from a disinterested, qualified physician, failing to evaluate the combination of all of Plaintiff's

serious medical conditions and failing to request Plaintiff to undergo an independent medical examination by a qualified, disinterested physician.

38. LINA has notified Plaintiff she has exhausted her administrative appeals.

39. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [5]

40. Plaintiff believes the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is a reason her disability and waiver of premium claims were denied.

41. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual, including Dr. Rowse and its own employees, who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny her claim.

42. With regard to whether Plaintiff meets the definition of disability set forth in the relevant policies, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by LINA as referenced herein are flagrant.

43. As a direct result of LINA's decision to deny Plaintiff's disability and waiver of premium claims she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

---

[5] *See* Footnote 2, *supra*.

44. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, unpaid premiums, prejudgment interest, reasonable attorney's fees and costs from Defendants.

45. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and to also reinstate her life insurance coverage while waiving the premium on that specific policy as a result of her being found disabled pursuant to the any occupation definition of disability as set forth in the disability policy. Plaintiff seeks the aforementioned benefits from the relevant policies from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan or policy conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 26th day of March, 2010.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
    Scott E. Davis
    Attorney for Plaintiff